Srinivasa Musunuru v. Loretta E. Lynch Good afternoon, your honors. May it please the court. My name is Christine Michel and I represent the appellant in this case, Srinivasa Musunuru. Mr. Musunuru's case concerns his right as an employment visa beneficiary to challenge adverse action taken on his visa petition and its priority date after he had ported to a new employer who did not file the initial visa petition. This court should reverse the district court's grant of the U.S. Citizenship and Immigration Services motion to dismiss because after Mr. Musunuru ported to a new employer, the agency wrongly revoked his visa petition and invalidated his priority date without first providing him with notice and an opportunity to respond to these actions. Why isn't the fact that the agency's regulations specifically exclude a petition beneficiary as an effective party conclusive? For purposes of notice of a visa revocation, the regulations at section 205.2 subsection B provide that before a revocation is final, notice must first be given and an opportunity to respond and those regulations are silent on whether notice can be given to a beneficiary and those regulations do not preclude the agency from giving notice to a beneficiary before it makes its revocation of a visa petition final. Of course the threshold issue is whether this was a discretionary decision that wasn't subject to review. Your Honor, this is not a discretionary decision by the agency because the regulations require notice. It is mandatory and the statute governing visa revocation does not implicate the notice regulations. Furthermore, the Supreme Court has held in Kusana that only decisions made discretionary by statute are precluded from judicial review. Here these regulations are mandatory. Furthermore, this court has held in Colma v. Holder that the only time that judicial review is precluded is if the agency's rationale for denying a procedural request also establishes a non-citizen's inability to prevail on the merits of the underlying claim. Here when the agency denied Mr. Musunuru's lawful permanent resident application, he moved to reopen the application and made arguments as to why the revocation was not proper because he was never given notice and an opportunity to respond. When the agency responded, it declined to give him that notice and an opportunity to be heard before that revocation is final. They did not reach the merits of his arguments regarding the revocation of the visa petition and said nothing about whether he could prevail on the visa revocation. They simply stated that because they feel that he lacks standing, they weren't going to consider his visa revocation arguments in denying his procedural request for notice and an opportunity to be heard before that revocation is final. And therefore, because the agency didn't address his arguments on the underlying visa revocation, they did not make a discretionary determination in denying him notice and an opportunity to be heard. Is this opportunity, they say, confined to the petitioner and not to the beneficiary? That is the agency's position. That's correct. I know. So maybe you can say why that's right or wrong. It's wrong, Your Honor, because in 2000, Congress passed the American Competitiveness in the 21st Century Act, which enacted INA Section 204J. And under that provision, employment beneficiaries who have an approved visa petition and a pending green card application that's been pending for 180 days or more, they may go to a new employer so long as the position that they're going to be taking is in the same or similar position as that for which the original petition was filed. This change in the law fundamentally altered the relationship between the visa beneficiary and his visa proceedings. Because once a beneficiary reports to a new employer by taking a new employment opportunity, he severs his relationship with the petitioning employer. At that point, the beneficiary is the only party interested in preserving not just the More importantly, it's associated priority date upon which he relies to pursue lawful permanent residence and ultimately receive his green card. So then he becomes the, I guess, the petitioner, he's in the shoes of the petitioner. Of course, this petitioner, original one, is closed up because of some kind of fraud. Correct. They're no longer in business. And they engage in fraud. So that discredits them completely. And so now the question is in the subsequent employer, where he's ported, I think they call it, to the subsequent employer, it sounds, what you're saying is fair, but it does also sound like it doesn't fit under, it's unfortunate maybe, it doesn't fit under the statute. It does fit under the statute because Congress's purpose in passing the portability statute was to give greater rights and protections to foreign national beneficiaries who want to pursue other employment opportunities. It was to give them greater mobility and flexibility. And so when they port, they terminate the relationship with that petitioning employer who has no interest in whether or not the visa and the priority date remain valid. Only the beneficiary has an interest in that. Their interests are at stake. So essentially they're, I'm sorry? I'm sorry. The problem we have here is that he did port, and normally he would retain his, I'll call it seniority, but because of the, and he was able to challenge that part of it, apparently. He was not able to challenge the underlying merits of the visa revocation or the invalidation of the priority date. He tried. What did he get? He got, they just frankly eliminated his seniority, but he's still doing the work, I guess. Well, the priority date is very important because it determines when you can become a green card holder. And the purpose of portability was Congress recognized that these visa beneficiaries are waiting years in a line to become a permanent resident. So that priority date is vital. Once the agency invalidated that and gave him a new priority date, Mr. Musunuru has to wait for years before becoming a permanent resident. The current visa bulletin provides that individuals in his specific category from India cannot become a permanent resident unless they had an approved visa petition with a priority date from August 2006. Well, is this initiated by India or the United States? The Department of State publishes the visa bulletin. The quoted, I'll call it, that's United States law? Correct. The Department of State is... I was wondering whether India was trying to keep its people from leaving. So that's not the case. So priority dates can advance or they can retrogress. And once you have established rightfully your place in that line, it is vital to you to protect it. And so the agency's position that a beneficiary who ports has no standing and can't challenge an action that takes away that priority date, which belongs to the visa beneficiary, that goes against Congress's intent and the spirit of the porting statute. In effect, what the agency's position is doing is almost discouraging porting. Because what they're saying is, okay, we'll allow the foreign national to take advantage of a new employment opportunity. As a matter of right, he preserves his priority date. But a couple of years later, five years later, as in Mr. Muthunuru's case, maybe 10 years later, the agency is going to go and revoke that visa petition and invalidate that priority date. And the only individual with any interest at that point in challenging the agency's actions is not given any notice. And they're telling that individual, well, sorry, you've lost your place in line. You're out of luck. And because the agency's position conflicts with the porting statute, it's nullifying the statute and it cannot stand. Which is why we are arguing that in this limited circumstance, when an employment beneficiary properly ports, severing ties with that petitioner who filed the petition, he is entitled to notice and an opportunity to respond to any adverse action that the agency intends to take on that petition and on the priority date associated with it. Additionally, under the regulations, it provides that if an agency is going to make a decision that is based on derogatory information of which an applicant or petitioner is unaware, they have to provide the applicant or petitioner with notice of the derogatory information and the opportunity to respond. In a porting scenario, the visa beneficiary is simultaneously an applicant for adjustment of status. And so if the agency is going to take adverse action on the visa petition, it directly and negatively impacts that pending adjustment of status application, as it did here when the agency denied Mr. Musunuru's green card application. Because of that direct link, the agency is required to provide the visa beneficiary, who is simultaneously the adjustment applicant, with notice and an opportunity to respond to the derogatory information that they will be using to revoke the visa petition that impacts the priority date and the pending adjustment of status application. When you talk about their, what was their word for their joint, their combined, what was the word you used? Simultaneously, yes. But one of the original petitioner is out of business and brought it out. Right, they're out of business, which underscores the importance of providing notice to the visa beneficiary. Well, you can see that. When you say that they are simultaneous, they can no longer be simultaneous. Even though the original petitioner went out of business, the visa petition can remain valid and its priority date can remain valid only if the beneficiary has ported. So because Mr. Musunuru ported before the petitioning employer went out of business, the visa petition remains valid as does its priority date. I can see the fairness that you're arguing and just concerned whether just because it's not fair, the statute allows it, that's all. Well, it's not just an issue of fairness. The agents, respectfully, the agency's position conflicts and essentially nullifies the porting statute. And in those cases, what the agency has done cannot stand. They've had several years to review the regulations, to come up to speed with the fundamental changes that the porting statute ushered in. They could have issued policy memorandums for guidance. They could have issued a precedential decision on this issue. But the agency simply says, sure, you can port, you can take advantage of that benefit as a foreign national who has talent and who another company wants to use. But several years later, if we think there's something wrong with the visa petition, we're going to revoke it and there's nothing you can do about it. Even though, as Congress intended under the porting statute, you have a right to preserve that petition and its priority date. Ms. Michel, this is a challenge to your procedural claim here. Yes. The decision was made to what? Not challenge the merits of the decision? Correct. The agency, in denying Mr. Musunuru's procedural request, did not address at all whether he could overcome the merits of the underlying visa revocation. And that's what we're challenging here. Simply that the agency did not follow proper procedure before revoking his visa and invalidating its priority date. Could he have challenged the merits of that? If they had given him notice, he could. And we argued that before the district court. Because with his subsequent employer who filed a new visa petition for him, the agency tried to revoke that new visa petition by saying that Mr. Musunuru's employment experience with the first petitioner was fraudulent. Mr. Musunuru provided evidence to show that it wasn't and the agency was satisfied. They issued a decision saying that the grounds for revocation were overcome. And so, if given the opportunity, which the district court recognized, Mr. Musunuru likely could have overcome the visa revocation. Well, they do have a new petitioner then. He does have a new petitioner. And that's where he lost his seniority. Right. And that's what you're objecting to. Yes. Because that priority date is so vital. And if given the notice and the opportunity to respond, he would have prevailed. But the agency... Is he in a position of not being employable right now? He is employable. However, in order for him not to sacrifice his pending adjustment of status application, any employment opportunities that he seeks have to be the same or similar as that for which the original visa petition back in 2005 was filed. So that's several years where he has to make sure that he's only taking advantage of a very limited amount of employment opportunities. So yes, he's employable, but in a limited, you know, limited jobs. Furthermore, because he's not a permanent resident... If he had had the date that you wish he had today, how would that expand his employment opportunities? He would be a permanent resident now, and he would be able to take advantage of whatever employment opportunities he wants without fear of the agency saying, well, this is not the same or similar position as that for which the visa petition in 2005 was filed. In any of his actions prior to this one, has he represented he wants to be a permanent resident? Yes. That is the goal. He and his wife...  Has that been represented to the government? It has. Back in March 2011, when the second visa petition was approved for Mr. Musunuru and he had retained that priority date, he could have become a permanent resident then. He followed up numerous times with the agency. He threatened mandamus action. He contacted his congressional representative, and the agency did nothing. Then, a year later, they send him an amended approval notice on that second visa petition with a new priority date. We wouldn't be in this situation if back in March 2011, the agency had adjudicated the pending green card application. I see my time is up. If there are no further questions... Thank you, Ms. Michele. Thank you. Mr. Goldsmith. Your Honor, may I please report Aaron Goldsmith on behalf of the government? I'd like to begin by answering your question about whether or not the underlying merits of this claim could be challenged. Under this court's precedent, we believe the answer is no, because under Allocator and the Holy Child case, this court read two statutes, 1252A to B and 1155 together and found that a challenge to the underlying merits of the decision are precluded by Congress. That was a decision that Congress made. You know, according to your argument, the agency could revoke the approval of all I-140 petitions from all applicants from India for no reason whatsoever and do it without following any of its procedures, and still these revocations would be completely unreviewable by any federal court. Am I correct? I think it's slightly different than that. There's, we're not saying, we're not, well, there's a couple things. First of all, there's, you raise an equal protection issue and I don't think if you look at the Holy Child case, the court basically, this court basically said, we're saving that issue for a different day, and that issue has never been addressed by this court. There is no jurisdiction to review the underlying merits of the revocation decision, and the reason is Congress, well, one, the petition belongs to the employer, not the beneficiary, and Congress was apparently concerned about the possibility of fraud and provided that the USCIS could go back and revoke petitions at any time, and this was in order to make sure that people did not obtain a place in the line that they were not, that they were not permitted to have, and with respect to whether or not 1252A to B precludes judicial review of the revocation decision, this court has already weighed in on the issue. The question is, the only jurisdictional question in this appeal is whether or not there was a carve-out for procedural questions, whether procedural questions are separate and apart from the underlying merits, and there's no language in either the al-Qaeda or the Holy Child case suggesting that, and there's no language in either 1252A to B or 1155 suggesting this carve-out. In the context of removal proceedings, there is a specific provision, 1252A to D, which provides for judicial review of questions of law. Well, we're not throwing them out, so let's, but I have to tell you, and believe me, no one understands better than I am that, you know, you're the messenger. I don't think I've seen, well, let's put it this way, this is one of the most thorough and diligent progressions through the immigration hoops, and yet he is being penalized. For what? For the fraud of another. It really isn't right. I just don't understand why the USCIS fails to use its discretionary authority in such cases. I mean, a case like this, to me, really highlights the problems and the injustices that occur when Congress removes from courts the ability to review decisions of an agency. It's a very, very bothersome case for me. Your Honor, I understand your concerns, and I will convey those to the agency, of course. With respect to the jurisdictional issue, it is a threshold issue, and I understand there are arguments for why Congress should not have done what it did, but Congress used the language it did. It carved out certain situations where there would be judicial review, and none of those apply to this particular situation, and with respect to the underlying, to the extent this court finds the district court had jurisdiction, the district court's ruling should be affirmed because it correctly found that under the regulations, the beneficiary was not entitled to notice. There can be an argument that the agency should promulgate new regulations or should come to a different conclusion, but there can't be a dispute as to what the regulations say and who they provide notice to. They provide notice to the petitioner, not the beneficiary, and it's because the petitioner is the one in the driver's seat. It is the petitioner who is the one who's filing the petition, who has the ability to withdraw the petition, and Congress has set up a system where the petitioner is in the center of the employment system. It is to allow employers who can't find U.S. workers to fill certain positions to bring in workers from overseas, and that is the system that Congress has set up in which the employer and the beneficiary is at the center and not the beneficiary, and that is reflected in the regulations that USCIS has promulgated. And so, just to sum up, and I understand some of the concerns that this panel has expressed. I would say that, one, as to the threshold issue, there is no jurisdiction under this together. There is no room left for, there's no path for judicial review, and two, to the extent this Court gets to the underlying merits, the agency followed its regulations, the notice is to go to the petitioner, not the beneficiary, and for that reason, the district court's dismissal should be afforded. Thank you. Mr. Goldsmith, just a factual inquiry, if you're able to respond. When VSG's officers pled guilty to the mail fraud, were all employees similarly situated to the petitioner here? Did they lose their place in line also? I don't have the answer to that question, Your Honor. I don't believe that's on the record. I don't have the answer. Should the fact that he ported his legal standing to another company before any fraud was detected at VSG make any difference in how he's treated in this proceeding? It has no impact on the authority of USCIS to revoke petitions. All right. Thank you, Mr. Goldsmith. Thank you. Ms. Michelle, your time has expired, but you may have two minutes. Thank you, Your Honor. Just a couple of brief points. With regard to jurisdiction, there is a presumption favoring judicial review of administrative actions, and I think Mr. Musunuru's case underscores that, because this court needs to ensure that the agency acts fundamentally fair and follows their regulations. The notice regulations are mandatory, and the notice regarding a visa revocation does not preclude the agency from giving notice to a visa beneficiary. In this case, the notice went to no one because VSG was no longer in business, and the agency moved to revoke the visa five years after its initial approval. So, at that point, the relationship had long been terminated when the agency moved to revoke the visa between Mr. Musunuru and VSG. And eventually, it found there was no fraud surrounding his application. That's correct, Your Honor. So, would it be accurate to say that his original petition was not revoked for fraud? We really don't know, but we can only assume that that's true because the agency took away his priority date, and you preserve your priority date if you port and a revocation happens after that for reasons other than fraud. So, if the agency revoked it for some other reason, the priority date can still be maintained, and that is their policy. It's only when a petition is revoked for fraud that you lose your priority date. We really don't know if that occurred here. We can only presume based on other decisions that the agency has issued. My final point is, Congress intended to protect the interests, not just of the petitioner who initiates the employment process, but also of the visa beneficiary. Because they receive the visa, it is permanent, and they are allowed to take that with them through proper porting. And this Court found in the stenographic machines case from 1978 that visa beneficiaries' interests are among those regulated and protected by, at that time, a predecessor statute governing the issuance of employment visa petitions. And for these reasons, Your Honor, we ask this Court reverse the District Court's grant of the motion to dismiss. Thank you very much. Thank you, Ms. Michelle. Thank you, Ms. Goldsmith. The case is taken under advisement.